## TRUMAN W. MONTAGUE
## v.
## O. B. FICKLIN.

SALE BY BAILEE—ESTOPPEL.—Almost every bailee or agent in possession is, by his possession, enabled to hold himself forth to the world as owner, but unless the real owner so holds him forth or consents that he may so hold himself, it will not avail the innocent purchaser from such bailee or agent as against the real owner.

APPEAL from the Circuit Court of Coles county ; the Hon. J. W. WILKIN, Judge, presiding.    Opinion filed December 4, 1885.

Mr. JAMES F. HUGHES and Mr. CHARLES BENNETT, for appellant.

Messrs. CRAIG & CRAIG, for appellee.

PLEASANTS, J.    The declaration in this case contained five

counts, of which four were for conspiracy ·by appellant and Arthur Hutton and Winston Hutton, the other defendants, to cheat appellee out of certain broomcorn, and fraudulently appropriating the same to their own use; and one ·was in trover for its conversion. A trial upon the plea of not guilty resulted in a verdict for the plaintiff for $800 damages. Motions were made by appellant separately for a new trial and in arrest, which were overruled, and upon the entry of judgment he appealed. The other defendants also prayed an appeal but did not perfect it.

The evidence, which embraced a wide scope with reference to the counts for conspiracy and was quite voluminous, disclosed the following case :

In March, 1876, appellee became security for the defendants Hutton, on a note to the Second National Bank of Charleston, for $2,000. Upon their failure to pay, the bank insisted on his securing the debt in some other way. He had given them a bond for a deed of eighty acres of land, and been paid, but had not made the deed. It was arranged between them and him that they should surrender this bond and quitclaim to him, and that he should then give a mortgage to the bank and a new bond to them to convey, upon their paying the debt.

This arrangement was carried out, and appellee also gave the bank other collaterals to the full amount. The Huttons paid only $350, all on account of interest, up to the spring of 1882, when it was further arranged between appellee and Arthur Hutton, acting also for his brother Winston, that they should raise a crop of broomcorn on a tract of 120 acres belonging to appellee, ·the proceeds of which, after paying the expenses, excepting their labor, should be applied on their bank debt. Appellee furnished the seed and money to defray the expenses, excepting their labor in planting, cultivating, harvesting, shedding, threshing and baling the crop, which amounted to sixty bales or about nine tons.

Appellant claims that in the latter part of December, he bought it of them at $80 per ton with $100 bonus and credited the amount on an indebtedness they owed him; that it was

Montague v. Ficklin.

hauled by them to a storehouse in Mattoon, rented by him, and afterward shipped and sold for his benefit, and that he had no notice of any interest therein, or claims thereto, of appellee, until after it was thus disposed of.

It appears that appellee was deceived by the Huttons, or by Arthur, as to where it was stored, and knew nothing of its disposition until it had been shipped away and sold on the market. No one besides the parties was present when the arrangement was made between appellee and Arthur about raising the corn. Arthur was also present at the trial but declined to testify. Appellee did not undertake to state the language used on that occasion, but testified that there was no leasing or renting of the land. He claimed that by the arrangement as made the legal title to the crop was to be in him, although in trust to apply the proceeds as above stated, and this was not contradicted.

There was evidence also tending to prove that Arthur recognized his right as claimed. He denied that he authorized the Huttons or either of them to sell it, before they did sell it, but this was disputed upon the evidence.

Appellant claimed, as matter of inference or presumption, that they were either tenants of appellee, accountable to him for only a proportion of the crop, as rent, and therefore that until it should be distinguished from the mass, a sale by them of the whole to a purchaser for value without notice of his lien would convey a good title, or were joint owners with him of the entire crop, and that being also in exclusive possession—with his consent—such a purchaser from them would be protected. And upon these hypotheses respectively the court so instructed the jury, but they appear to have found the facts against him, and their finding was clearly supported by the evidence.

He contended further, that if appellee placed them in possession of the land and allowed them to raise and harvest the corn and store it in a shed on their own premises, and by means of such possession they were enabled to hold themselves forth to the world as its owner, and by reason thereof they sold it to appellant and he purchased in good faith without notice

of appellee's interest or claim, he thereby acquired a good title to it and was not liable in this action. An instruction asked to that effect was refused, and this is the chief cause of complaint here.

In the argument for this position he relies on the authority of Koch v. Willi, 63 Ill. 144. In that case Koch employed Friday as his agent to buy corn in the country for shipment to St. Louis and furnished him money for that purpose. Friday bought in his own name, among others, of Willi, without disclosing his agency. Some he shipped to St. Louis and some he sent to his principal. The corn in controversy remained in his possession, and Willi, who had not been paid, purchased it of him in good faith, in satisfaction of his debt. Koch then brought the suit in trover and the court held that he could not recover. Why should he? He never had title to or possession of the corn except as against Friday. It was not sold to him. It was bought by and sold to Friday for money in his hands, which, though Koch's as between them, was Friday's as to his innocent vendors, for the case of money is an exception to the rule that the real owner can not be divested without his consent. Fawcett et al. v. Osborn et al., 32 Ill. 424. Having intrusted his money to Friday, who used it as his own and bought and held in his own name, Koch was stopped to deny, as against innocent purchasers from him, that he was the owner and as such had the right to sell. If he had intrusted the corn itself instead of the money to his agent, the case would have presented a different question.

Here the broomcorn was raised on appellee's land. He claimed to be the owner, and that the Huttons raised and harvested and shedded it for him. The refused instruction in question so supposes, and the possession and control by them as therein stated is not inconsistent with the fact. If he was the real owner and they his servants, bailees or agents, without other authority than was imported by such possession and control, they could not divest him by their sale to appellant, however innocent he may have been. Almost every bailee or agent in possession is by his possession enabled to hold himself forth to the world as owner, but unless the real

owner so holds himself forth or consents that he may so hold himself, it will not avail the innocent purchaser from him as against such owner. This question was considered in the case of Hutchinson v. Oswald—decided at this term—and we here repeat only the citation of authorities there relied on. Fawcett et al. v. Osborn et al., *supra;* Burton v. Curyea, 40 Ill. 329; Klein v. Seibold, 89 Id. 540.

Perceiving no material error in this record the judgment of the circuit court will be affirmed.

Judgment affirmed.